UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID A. PARKER,

             Plaintiff,                   Case No. 2:17-cv-12307
                                    District Judge Marianne O. Battani
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

             Defendant.
_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT OR REMAND (DE 11), GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14) and
AFFIRM THE COMMISSIONER'S DECISION</u>**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (DE 11), **GRANT** Defendant's motion for summary judgment

(DE 14), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff, David A. Parker, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for supplemental security income (SSI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment or remand (DE 11), the Commissioner's cross-motion for summary judgment (DE 14), and the administrative record (DE 9).

### A. Background and Administrative History

Plaintiff alleges his disability began on September 12, 2014, at the age of 43. (R. at 133.) He lists several conditions (heart problems, strokes, learning disability, depression, headaches, cerebral palsy, and back problems) that limit his ability to work. (R. at 152.) His application was denied on January 21, 2015. (R. at 54-85.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 86-88.) ALJ Regina Sobrino held a hearing on October 18, 2016, at which Plaintiff and a vocational expert (VE), Stephanie Lorey, testified. (R. at 29-53.) She issued an opinion on February 1, 2017, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7-28.) On May 22, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1-6, 131-132.) Thus, ALJ Sobrino's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on July 14, 2017. (DE 1.)

### B. Plaintiff's Medical History

The administrative record contains approximately 423 pages of medical records, all of which was available to the ALJ at the time of her February 1, 2017

decision.  (R. at 27-28, 213 [Ex. 10E], 216-217 [Ex. 12E], 224-643 [Exhibits 1F –

17F].)  They will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since September 12, 2014, the application date.  (R. at

12.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:

central nervous system disorder, degenerative disc disease (DDD), sleep disorder,

headache disorder, polycythemia, chronic kidney disease (CKD), chronic

obstructive pulmonary disease (COPD), hypertension, obesity, an affective

disorder, and an anxiety-related disorder.  (*Id*.)  At **Step 3**, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments.  (*Id*. at 12-15.)

Between **Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 416.967(a), with
> the following additional limitations:  no climbing of ladders, ropes, or
> scaffolds; occasional climbing of stairs, crouching, stooping,
> balancing, kneeling, and crawling; no work around hazards such as

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

> unprotected elevations or dangerous moving machinery; no use of
> right foot or leg controls; no concentrated exposure to respiratory
> irritants; no driving as a work duty; simple, routine work not done at a
> production rate pace (e.g., no assembly line work), with minor
> changes in the work setting; no work that requires interaction with the
> public; routine contacts with co-workers; and routine supervision.

(*Id*. at 15-22.)  At **Step 4**, the ALJ determined that Plaintiff had no past relevant

work.  (R. at 22.)  At **Step 5**, considering Plaintiff's age, education, work

experience, and RFC, the ALJ determined that there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform.  (R. at

23.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as

defined in the Social Security Act, since September 12, 2014, the date the

application was filed.  (*Id*.)[2]

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

---

[2]In fact, the administrative record lists the alleged onset date as September 12,
2014 and the application date as September 15, 2014.  (R. at 133.)

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff sets forth four arguments:  **(1)** "The court transcript has multiple

inaccuracies and/or incomplete recorded responses from Plaintiff that are

prejudicial to the outcome of the case;" **(2)** "The ALJ did not consider Plaintiff's

cognitive deficits including borderline intellectual functioning a severe

impairment;" **(3)** "The ALJ erred in giving limited weight to the opinion of the

consultative examiner;" and, **(4)** "the ALJ failed to sustain her burden of

establishing there is other work in the national economy that plaintiff can

perform."  (DE 11 at 11-19.)  The Commissioner argues, *inter alia*, that her

decision "is supported by substantial evidence[.]"  (DE 14 at 1 ¶ 2.)

### 1.     Accuracy and completeness of hearing transcript

Plaintiff argues that the October 18, 2016 hearing transcript "has multiple

inaccuracies and/or incomplete recorded responses from Plaintiff that are

prejudicial[.]"  (DE 11 at 12-13.)  Within his own testimony, Plaintiff specifically

notes:

**(a)**     8 instances of "(No audible response.);"

**(b)**     4 instances of "--" within Plaintiff's answers; and,

6

**(c)**    1 notation of "(Audio malfunction.)"

(R. at 34, 35, 36, 38, 39, 41, 42.)  In addition, Plaintiff notes an instance of

"[INAUDIBLE]" within the VE's testimony.  (R. at 47.)

Plaintiff contends that the "audio malfunction" omitted his counsel's line of

questioning regarding "Plaintiff's limited ability to read/write and cognitive

limitations[,]" the answers to which could have been used to show the severity of

his "cognitive deficits/borderline intellectual functioning . . . ."  (DE 11 at 12.)

Plaintiff also contends that the inaccurate instances of "--" are contradicted by his

counsel's "detailed hearing notes."  However, if any of the aforementioned

omissions or inaccuracies "are pertinent to the case[,]" or "critical," (DE 11 at 13),

Plaintiff has failed to show how he was prejudiced by them.  In other words, even

if these omissions or inaccuracies concerned Plaintiff's "illiteracy and inability to

perform certain activities of daily living . . . [,]" Plaintiff's statement of error does

not fill in any of the blanks or correct any of the alleged inaccuracies.  *See Mireles*

*ex rel. S.M.M. v. Comm'r of Soc. Sec.*, No. 1:13-CV-699, 2014 WL 4854426, at *6

(W.D. Mich. Sept. 29, 2014), *aff'd*, 608 F. App'x 397 (6th Cir. 2015) ("There is no

question that a portion of the ME's testimony was not transcribed.  However,

plaintiff has not shown any prejudice resulting from the portion of the testimony

cited in his brief.").  Moreover, even though the transcript lists "Karen Spencer" as

Plaintiff's counsel, it appears Plaintiff was actually represented by attorney Kerry

Jane Spencer, who is also Plaintiff's counsel on appeal. (*Compare* R. at 29, 31, *with* R. at 10, 89-90 & DE 11 at 2, 21.) Therefore, this does not appear to be "a case where an appeal is being brought by appellate counsel having no actual knowledge of the administrative proceedings." *Mireles ex rel. S.M.M.*, 2014 WL 4854426, at *6. Finally, as the Commissioner points out, ALJ Sobrino heard the testimony, considered it in her decision, and determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (DE 14 at 7, R. at 16.) Here, the Undersigned is not convinced that the aforementioned inaccuracies and/or incomplete recorded responses within the hearing transcript have prevented a meaningful review of Plaintiff's appeal. *See Collins v. Astrue*, No. CIV. 06-211-GFVT, 2008 WL 817332, at *6 (E.D. Ky. Mar. 21, 2008) ("if the Court concludes that the record before it is not the full and complete record upon which the agency based its decision, the Court may presumably reverse the decision in light of the Commissioner's failure to provide the necessary materials to the Court to allow meaningful review."). Plaintiff not having shown prejudice for the hearing transcript's above-listed omissions or alleged inaccuracies and not having put forth a developed challenge to the ALJ's credibility determination, his statement of error is unavailing.[3]

---

[3] Plaintiff only mentions credibility when he states, in the conclusion of his brief,

### 2. The severity of Plaintiff's cognitive deficits and borderline intellectual functioning

At Step 2, the ALJ found that Plaintiff had several severe impairments, including the mental health impairments of an affective disorder and an anxiety-related disorder. (R. at 12.) Plaintiff seems to argue that the ALJ should have found Plaintiff's "cognitive deficits and borderline intellectual functioning" to be severe, in support of which he points to: **(a)** the January 29, 2014 and December 12, 2014 CE reports of licensed psychologist Matthew P. Dickson, Ph.D. (R. at 256, 307); **(b)** Plaintiff's hearing testimony (R. at 40-41, 43); **(c)** his function report (R. at 183, 185); and **(d)** his certified earnings record (R. at 140-141). (DE 11 at 14.) Plaintiff further contends that "[t]here are several notations in the medical evidence noting Plaintiff's limited intelligence and history of cerebral vascular accident (CVA)[,]" but he does not provide record citations. (*Id*.)

Plaintiff's Step 2 argument is not convincing. First, although the January 29, 2014 and December 12, 2014 CE reports of licensed psychologist Matthew P. Dickson, Ph.D., include diagnoses of "rule out borderline intellectual functioning,"

---

that "the ALJ made an improper credibility determination by mischaracterizing critical facts." (DE 11 at 20.) Moreover, the brief's conclusion contends that "[t]he ALJ mischaracterized the record." (*Id*.) "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995) (citation omitted)).

"rule out specific learning disorders," and/or "rule out unspecified neurocognitive disorder[,]" (R. at 256, 307), "'rule-out' diagnoses . . . do not establish the existence of medically determinable impairments." *Dunn v. Berryhill*, No. C16-5802-RSM-MAT, 2017 WL 2536970, at *2 n.2 (W.D. Wash. May 25, 2017), *report and recommendation adopted*, No. C16-5802-RSM, 2017 WL 2532960 (W.D. Wash. June 9, 2017).[4]  As the Commissioner notes, even Dr. Dickson's December 12, 2014 CE report states that "[t]esting would be needed to assess his cognitive problems more accurately."  (R. at 307.)  (*See* DE 14 at 9.) Thus, Plaintiff has not made the case that "sufficient circumstances exist in this case to permit a severity finding in regards to [his] limited cognitive functioning." (DE 11 at 14.)

Second, where Plaintiff "cleared step two of the analysis[,]" and the ALJ considered "severe and nonsevere impairments in the remaining steps . . . [,]" "[t]he fact that some of [Plaintiff's] impairments were not deemed to be severe at

---

[4] *See also* SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) ("The RFC assessment considers only functional limitations and restrictions that result from an individual's *medically determinable impairment* or combination of impairments, including the impact of any related symptoms. Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her *medically determinable impairment(s)* and any related symptoms, due to such factors as age and natural body build, and the activities the individual was accustomed to doing in his or her previous work.") (emphases added).

step two [was] legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

Third, even if, for the sake of argument, the ALJ had improperly determined that Plaintiff's cognitive deficits and borderline intellectual functioning were "non-severe," the error is harmless if the ALJ properly considered these impairments in the remaining steps of the sequential evaluation. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."). *See also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("even if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of Nejat's impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless.") (citing *Maziarz*, 837 F.2d at 244).

In Plaintiff's case, the ALJ adequately considered Plaintiff's cognitive deficits and borderline intellectual functioning during the sequential evaluation's remaining steps.  At Step 3, the ALJ cited Plaintiff's October 5, 2014 function report and Dr. Dickson's December 12, 2014 CE report in support of the conclusion that Plaintiff is moderately limited with regard to concentration,

persistence or maintaining pace (CPP).  (R. at 14, R. at 180-187, 304-308.)  Then,

within the RFC determination, the ALJ expressly noted, *inter alia*:

- Plaintiff's testimony about education (R. at 16; *see also* R. at 34, 42)

- Plaintiff's testimony that he did not drive (R. at 16, 37; *see also* R. at 14, 305.)

- Dr. Dickson's December 2014 CE report, assigning it "limited weight" (R. at 18, 304-308)

- Plaintiff's "past medical history" included CVA.  (R. at 18.)

- Patrick D. Hawkins, DNP, NP-C's March 8, 2016 notes that Plaintiff had "previous recurrent strokes with mild cognitive defects . . ." (R. at 19, 332-336)

- Melissa Stegmeyer, PA-C's September 28, 2016 physical RFC assessment, which opined that Plaintiff's pain or other symptoms would "occasionally" interfere with his attention and concentration  (R. at 21, 380-383)

Moreover, after expressly noting state agency consultant Jerry Csokasy, Ph.D.'s

January 21, 2015 opinion that Plaintiff had moderate difficulties in maintaining

CPP, the ALJ gave "significant weight" to Dr. Csokasy's opinion "regarding

mental functioning . . . [,]" and ultimately limited Plaintiff to:  "simple, routine

work not done at a production rate pace, with only minor changes in the work

setting, no work requiring interaction with the public, routine contacts with co-

workers, and routine supervision."  (R. at 15, 22, 60.)  Therefore, Plaintiff's

contention that the ALJ failed to consider his cognitive limitations – such as

"maintaining focus" and/or Dr. Dickson's impressions about Plaintiff's mental abilities (DE 11 at 15-16) – is inaccurate.

### 3.   The ALJ's treatment of opinion evidence

ALJ Sobrino states that she "considered opinion evidence in accordance with the requirements of 20 CFR 416.927."  (R. at 15.)  As pertinent to this appeal, the ALJ assigned:

- "limited weight" to Dr. Dickson's December 12, 2014 CE report (R. at 304-308 [Ex. 8F])

- "limited weight" to PA Stegmeyer's September 28, 2016 physical RFC assessment (R. at 380-383 [Ex. 13F])

- "significant weight" to Dr. Csokasy's January 21, 2015 opinion "regarding mental functioning . . . [,]" (*see* R. at 59-60, 63-65 [Ex. 1A])

(R. at 18, 21-22.)

### a.   Dr. Dickson

Dr. Dickson conducted CE examinations on January 29, 2014 and December 12, 2014.  (R. at 253-256, 304-307.)  In the latter report, Dr. Dickson observed:

> It is my impression that David's mental abilities to understand, attend to, remember, and carry out instructions of work-related behaviors are markedly impaired by his slowed thought processes (and possible other cognitive problems). He says he has not slept in a week and will be seeing a physician for this problem in a couple days. He reports always having had learning problems. *Testing would be needed to assess his cognitive problems more accurately*. Based on today's exam, it is my impression that David's abilities to respond appropriately to co-workers and supervision and to adapt to change and stress in the workplace are currently markedly impaired, primarily

by his apparent exhaustion, and his depression would also contribute
to problems in this area.

(R. at 307 (emphasis added).)  The diagnoses included persistent depressive

disorder, as well as notations to "rule out" unspecified neurocognitive disorder,

borderline intellectual functioning, and specific learning disorder.  (*Id*.)

The ALJ expressly discussed this report.  (R. at 18.)  In so doing, she

acknowledged that Dr. Dickson was a licensed psychologist who "evaluated the

claimant at the request of State agency[.]"  (*Id*.)  Thus, it is clear that the ALJ's

consideration of this opinion was informed by the lack of a treatment relationship,

as well as the examining relationship and specialization factors.  20 C.F.R. §§

416.927(c)(1),(2),(5).  *See also* SSR 96-6P, 1996 WL 374180 at *2 (S.S.A. July 2,

1996) ("State agency medical and psychological consultants are highly qualified

physicians and psychologists who are experts in the evaluation of the medical

issues in disability claims under the Act.").

Then, after reviewing several sections of Dr. Dickson's mental status notes,

including the note that Plaintiff's presentation was "dominated by his apparent

exhaustion[,]" and Dr. Dickson's above-quoted medical source statement, the ALJ

assigned the opinion "limited weight," and explained:

> At the time of the examination, the claimant reported that he had not
> slept in a week and would "be seeing a physician for this problem in a
> couple days." Later records document that the claimant was diagnosed
> with and treated for sleep apnea. Marked impairment of functioning is
> *not supported* by the treatment history, with no mental health

14

> treatment reported, or by other clinical evidence (e.g., in 2016, the
> treating hematologist noted that the claimant was alert and oriented on
> examination; Exhibit 14F; see also Exhibit 17F)). The record as a
> whole is *consistent with* moderate limitations, as discussed above in
> connection with evaluation of the "paragraph B" criteria of the
> listings.

(R. at 18 (quoting R. at 307) (emphases added).)  Therefore, it is clear that the ALJ

also considered the supportability and/or consistency factors when she discounted

Dr. Dickson's opinion.  20 C.F.R. §§ 416.927(c)(3),(4).

### b.    Weight assigned and reasons given

Plaintiff attempts to argue that the ALJ did not comply with 20 C.F.R. §§

404.1527, 416.927.  (DE 11 at 16-18.)  The SSA "will always give good reasons in

[its] notice of determination or decision for the weight [it] give[s] [a Plaintiff's]

treating source's medical opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

"[T]he notice of the determination or decision [regarding a denial of benefits] must

contain specific reasons for the weight given to the treating source's medical

opinion, supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave

to the treating source's medical opinion and the reasons for that weight."  SSR 96-

2P, 1996 WL 374188 at *5 (S.S.A. July 2, 1996).

However, Plaintiff's opinion evidence argument has a fault in its foundation.

ALJ Sobrino did not, as Plaintiff suggests, discount Dr. Dickson's opinion for his

observation that Plaintiff's presentation was "dominated by his apparent

15

exhaustion."  (R. at 306, DE 11 at 16.)  While ALJ Sobrino did, in fact, expressly cite this note in her review of Dr. Dickson's CE report, she discounted the report's weight based on the supportability and/or consistency factors, as noted above in further detail.  (R. at 18.)  Thus, ALJ Sobrino was not "playing doctor" by stating that Dr. Dickson's conclusions "merit only limited weight because basically Plaintiff was tired."  (DE 11 at 16.)  Nor was ALJ Sobrino reasoning that "if Plaintiff went home and got a good night['s] sleep, his psychiatric testing would be greatly improved."  (DE 11 at 16-17.)  Nor was she "making assumptions regarding the Plaintiff's condition[,]" or "substituting her own judgment for that of medical experts whose opinions are supported by medical evidence."  (DE 11 at 17.)  Instead, the ALJ's lengthy review of Dr. Dickson's December 12, 2014 CE report made note of two of Dr. Dickson's observations that legitimately detract from the reliability of Dr. Dickson's opinion:  (1) Plaintiff's "apparent exhaustion[;]" and, (2) a "more accurate" assessment of Plaintiff's cognitive problems would require further testing.  (R. at 18, 306-307.)  It is hardly surprising that the ALJ discounted this "marked impairment" opinion based on the supportability and/or consistency factors.

It is "clear to [this] subsequent reviewer[]" that the ALJ considered several of the factors for weighing medical opinions and offered good reasons for the weight assigned to Dr. Dickson's December 12, 2014 CE report.  SSR 96-2P, 20

C.F.R. §§ 404.1527(c)(2),(3), 416.927(c)(2),(3).  As such, I disagree that "the ALJ did not give a meaningful explanation for her decision to accord [the] opinion little weight," (DE 11 at 18), and find that "the ALJ reasonably assigned it limited weight."  (DE 14 at 10.)

### 4.     The RFC's mental health limitations

Plaintiff argues that the ALJ "violated SSR 96-8p in not considering the effect of the Plaintiff's impairments, particularly his cognitive defects."  (DE 11 at 18.)  "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8P.  However, "[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."  (*Id.*).

The VE testified that a person may be absent "[p]robably no more than one time per month" to keep his or her job.  (R. at 50-51.)  The VE also testified that, generally, a person may be "no more than 10 percent off task" to keep a job.  (R. at 51.)  Based on this testimony, Plaintiff claims that "no jobs were identified with the [RFC] reflected by the treating facility and consultative examiner."  (DE 11 at

17

18.)  Setting aside that this statement of error does not identify the records upon which Plaintiff relies, the Court assumes he is referring to records from Dr. Moore and/or PA Stegmeyer (*see*, *e.g.*, R. at 380-383, 554) and psychologist Dr. Dickson's CE reports (R. at 253-257, 304-308).  (*Compare* DE 11 at 6, 8, 16 *with* DE 11 at 18-19.)

Plaintiff has not successfully challenged the ALJ's mental health limitations of "simple, routine work not done at a production rate pace (e.g., no assembly line work), with minor changes in the work setting; no work that requires interaction with the public; routine contacts with co-workers; and routine supervision."  (R. at 15.)  First, to the extent Plaintiff is asking the Court to side with PA Stegmeyer's September 28, 2016 opinions that Plaintiff was "likely to be absent from work as a result of [his] impairment(s) or treatment . . . [m]ore than 4 days per month[,]" (R. at 381) or that he would "occasionally" experience "pain or other symptoms severe enough to interfere with the *attention and concentration* needed to perform even simple work tasks[,]" (R. at 382 (emphasis in original)), Plaintiff has not shown that the ALJ's assignment of "limited weight" to this assessment (*see* R. at 21) was erroneous.  Likewise, to the extent Plaintiff is asking the Court to side with CE psychologist Dr. Dickson's December 12, 2014 impressions about Plaintiff's mental abilities (R. at 307), Plaintiff has not shown error in the ALJ's treatment of this report either, as set forth in detail above with respect to Plaintiff's opinion

evidence statement of error.  Moreover, it is not this Court's role to reweigh the evidence, and it should decline the invitation to do so.  *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.") (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)).

Second, to the extent Plaintiff takes issue with the ALJ's "assumption" that he can perform "self-paced work" or "work not dictated by an external source[,]" (DE 11 at 19), the ALJ addressed CPP at Step 3 and within the RFC determination, where she cited:  (a) Plaintiff's October 5, 2014 function report (R. at 180-187 [Ex. 4E]); (b) Dr. Dickson's December 12, 2014 CE report (R. at 304-308 [Ex. 8F]); and, (c) Dr. Csokasy's January 21, 2015 opinions (R. at 59-60, 63-65 [Ex. 1A]). (R. at 14, 22.)  The ALJ also reviewed Dr. Dickson's December 12, 2014 CE report, including the note that Plaintiff's "abilities to respond appropriately to co-workers and supervision . . ." were "markedly impaired[.]"  (R. at 18, 307.) However, the ALJ concluded that "[m]arked impairment of functioning" was "not supported by the treatment history[.]"  (R. at 18, 307.)  In other words, it was a finding, based on substantial evidence and a proper discounting of contrary evidence, not a mere "assumption."

In sum, Plaintiff suggests that his cognitive defects should have been addressed with off-task and absence limitations, as well as further CPP and social

interaction limitations. (DE 11 at 18-19.) However, the ALJ imposed the limitations of "simple, routine work not done at a production rate pace (e.g., no assembly line work)," and "no work that requires interaction with the public[,]" but permitted "routine contacts with co-workers[,]" and "routine supervision." (R. at 15, 22.) Plaintiff has failed to meet his burden to overturn the ALJ's RFC determination. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Therefore, the ALJ's mental health limitations should stand.

### F. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment or remand (DE 11), **GRANT** Defendant's motion for summary judgment (DE 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 17, 2018       s/*Anthony P. Patti*
                             Anthony P. Patti
                             UNITED STATES MAGISTRATE JUDGE

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on August 17, 2018, electronically and/or by U.S. Mail.

<u>s/Michael Williams</u>
Case Manager for the
Honorable Anthony P. Patti
